OPINION OF THE COURT
SLOVITER, Circuit Judge.
The State of New Jersey, Department of Treasury, Division of Investment (“New Jersey”) appeals the District Court’s order denying its motion to remand the action it brought under the Securities Act of 1933, a statute that specifically precludes removal, which defendants had removed to federal court. Defendants/Appellees Richard S. Fuld and various other officers and directors of Lehman Brothers Holdings, Inc., (collectively, “the Directors”) have filed a motion to dismiss the appeal for lack of appellate jurisdiction. We proceed to examine our jurisdiction over the District Court’s order denying remand.
I.
Background
New Jersey manages the pension and retirement plan funds for over 700,000 of its active and retired state employees. In *818 April and June of 2008, New Jersey purchased over $180 million of investment securities from Lehman Brothers Holdings, Inc. (“Lehman”) consisting of preferred stock and common stock in Lehman. Three months after New Jersey’s June purchases of these securities, Lehman filed for bankruptcy protection.
In March 2009, New Jersey filed a complaint in the Superior Court of New Jersey against the Directors and Ernst & Young LLP, an accounting firm, alleging violation of state law and the federal Securities Act of 1933 (the “Securities Act”), 15 U.S.C. §§ 77k, 77l, 77o, because of alleged material misstatements and omissions regarding the value of Lehman’s assets. Lehman, protected by the automatic stay, 11 U.S.C. § 362(a)(1), was not named as a defendant.
New Jersey’s complaint was one of dozens filed against the Directors by investors seeking to recover their investment losses. Those actions have been consolidated by the Judicial Panel on Multidistrict Litigation and are pending in the Southern District of New York. See In re Lehman Bros. Holdings, Inc., Sec. & Employee Ret. Income Sec. Act (ERISA) Litig. (“In re Lehman Bros.”), 598 F.Supp.2d 1362, 1364 (J.P.M.L.2009). Many of the actions, similar to the one brought by New Jersey in state court, were brought by state and local government investment funds.
The Directors removed New Jersey’s action to federal court, asserting that it was “related to” the Lehman bankruptcy and hence removable under 28 U.S.C. §§ 1334(b) and 1452(a). New Jersey filed a motion to remand, arguing that section 22(a) of the Securities Act prohibits the removal from state courts of eases arising under the Act.[1] See 15 U.S.C. § 77v(a) (“Except as provided in section 77p(c) of this title [relating to class actions], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.”). After considering the conflict between the Bankruptcy Code (which allows removal) and the Securities Act (which prohibits it), the District Court denied New Jersey’s motion to remand, finding persuasive the decision of the Second Circuit that the bankruptcy removal statute, 28 U.S.C. §§ 1334(b) and 1452(a), trumps the anti-removal provision of the Securities Act. See State of N.J., Dep’t of Treasury, Div. of Inv. v. Fuld, No. 09-1629(AET), 2009 WL 1810356, at *2 (D.N.J. June 25, 2009) (citing Cal. Pub. Employees’ Ret. Sys. v. WorldCom, Inc., 368 F.3d 86 (2d Cir.2004), cert. denied, 543 U.S. 1080, 125 S.Ct. 862, 160 L.Ed.2d 824 (2005)). The statutory conflict raises an issue of first impression for our court, and to date the Second Circuit in WorldCom is the only court of appeals to have addressed it. 368 F.3d at 90.
In June 2009, New Jersey filed a notice of appeal from the District Court’s order denying remand, citing 28 U.S.C. § 1291 and the collateral order doctrine as the bases for our appellate jurisdiction. New Jersey also filed, in the alternative, a petition for interlocutory appeal under 28 U.S.C. § 1292(b). The District Court granted in part New Jersey’s motion for certification under § 1292(b), certifying for appeal the question of “how to resolve the statutory conflict between 28 U.S.C. § 1452(a) and Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a).” *819 State of N.J., Dep’t of Treasury, Div. of Inv. v. Fuld, No. 09-1629(AET), 2009 WL 2905432, at *1 (D.N.J. Sept.8, 2009). A motions panel of this court denied the petition in a one-line order. See Order, State of N.J., Dep’t of Treasury, Div. of Inv. v. Fuld, No. 09-8068 (3d Cir. Oct. 16, 2009). The motions panel also denied New Jersey’s petition for panel rehearing, which requested “that the Petition be referred for decision to the merits panel” in this appeal. N.J.’s Pet. for Panel Rehr’g at 1, State of N.J., Dep’t of Treasury, Div. of Inv. v. Fuld, No. 09-8068 (3d Cir. Oct. 30, 2009). Accordingly, appellate jurisdiction must be found, if at all, in 28 U.S.C. § 1291 and the collateral order doctrine.[2] Before us is the Directors’ motion to dismiss the appeal for lack of jurisdiction.
II.
Discussion
The courts of appeals “have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court.” 28 U.S.C. § 1291. A “final decision” is a decision by the district court that “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945), or one “by which a district court disassociates itself from a case,” Swint v. Chambers County Comm’n, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). However, the Supreme Court “has long given § 1291 a practical rather than a technical construction.” Mohawk Indus., Inc. v. Carpenter, - U.S. -, 130 S.Ct. 599, 605, — L.Ed.2d - (2009) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (internal quotations omitted)). Under the collateral order doctrine enunciated in Cohen over a half-century ago, the courts of appeals have appellate jurisdiction over “that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” 337 U.S. at 546, 69 S.Ct. 1221. The collateral order doctrine “permits appeals not only from a final decision ... but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered ‘final’ ” for purposes of § 1291. Swint, 514 U.S. at 42, 115 S.Ct. 1203 (citing Cohen, 337 U.S. at 546, 69 S.Ct. 1221).
To be appealable under the collateral order doctrine, an order must “[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). “[A] failure to meet any one of the three factors renders the doctrine inapplicable as a basis for appeal, no matter how compelling the other factors may be.” In re Pressman-Gutman Co., 459 F.3d 383, 396 (3d Cir.2006) (citing Virgin Islands v. Hodge, 359 F.3d 312, 320 (3d Cir.2004)).
The criteria are “stringent,” Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), and the scope of the doctrine is “narrow” and “modest,” Will v. Hallock, 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006). The Supreme Court *820 has stressed that the collateral order doctrine “must ‘never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered,’ ” Mohawk, 130 S.Ct. at 605 (quoting Digital Equip., 511 U.S. at 868, 114 S.Ct. 1992), since “[plermitting piecemeal, prejudgment appeals ... undermines ‘efficient judicial administration’ and encroaches upon the prerogatives of district court judges, who play a ‘special role’ in managing ongoing litigation,” id. (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)). “The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes.” Id.
The parties in this appeal agree that the first two Cohen criteria are satisfied: the District Court’s order “conclusively determine[s] the disputed question” and it “resolve[s] an important issue completely separate from the merits of the action.” Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. 2454. The parties dispute only whether the right at issue is “effectively unreviewable” after a final judgment. Id. New Jersey argues that the District Court’s order denying remand is “effectively unreviewable” because the interest sought to be protected — namely, its interest in having the Securities Act claim heard in a New Jersey state court — will be lost if the case proceeds to final judgment. According to New Jersey, “[t]he matter at issue ... flies directly in the face of Congress’s express intent to prevent removal of 1933 Securities Act cases filed in state court to federal court,” N.J.’s Resp. to Directors’ Mot. to Dismiss at 17, and without interlocutory review “New Jersey ... will be forced into a web of complex, time consuming and costly bankruptcy proceedings,” id. at 18. New Jersey contends that “an appeal that voids every order entered in the case will be too late and years of expensive litigation will have been fruitless.” Id. at 18-19.
The crux of New Jersey’s argument is that the order denying remand “implicate[s][the] state’s interest in protecting certain aspects of the administration of its judicial system” inasmuch as “a motion to remand on the basis of subject matter jurisdiction seeks to invoke [a] congressional policy to protect the interest of a state sovereign which is seeking to vindicate the rights of its pension plan participants.” Id. at 17-18. In response, the Directors argue that New Jersey fails to satisfy Cohen’s third criterion because “the existence of removal jurisdiction can be raised on appeal of the eventual final judgment in the case.” Directors’ Mot. to Dismiss at 7.
In Mohawk, the Court held that the court of appeals had no jurisdiction under the collateral order doctrine over the interlocutory appeal by a defendant/employer of the trial court’s order requiring it to disclose information that it sought to protect as privileged. 130 S.Ct. at 603. The Supreme Court, speaking through Justice Sotomayor, “acknowledge^] the importance of the attorney-client privilege” as “one of the oldest recognized privileges for confidential communications,” id. at 606 (citation and internal quotations omitted), but nonetheless held that the disclosure of privileged materials was not “effectively unreviewable” after final judgment because “[ajppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence,” id. at 605, 606-07. In those cases where “litigants [are] confronted with a particularly injurious or novel privilege ruling,” the Court noted that liti *821 gants have “useful ‘safety valves’ ” available to them, including interlocutory appeal of a certified order under 28 U.S.C. § 1292(b) and mandamus relief. Id. at 607-08 (quoting Digital Equip., 511 U.S. at 883, 114 S.Ct. 1992) (alteration omitted).
The Court’s decision in Mohawk is consistent with earlier decisions that declined to apply the collateral order doctrine. In Firestone, the Supreme Court held that “[a]n order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not.” 449 U.S. at 377, 101 S.Ct. 669. In Richardson-Merrell, Inc. v. Roller, the Court held that an order disqualifying counsel in a civil case did not qualify for immediate appeal under the collateral order doctrine. 472 U.S. 424, 426, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). The Court reached the same result in a criminal case in Flanagan v. United States, notwithstanding the Sixth Amendment rights at stake. 465 U.S. 259, 260, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).
In contrast, the Supreme Court has applied the collateral order doctrine in cases involving orders rejecting absolute immunity, Nixon v. Fitzgerald, 457 U.S. 731, 742-43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In Nixon, the Court stressed the “compelling public ends,” 457 U.S. at 758, 102 S.Ct. 2690, “rooted in ... the separation of powers,” id. at 749, 102 S.Ct. 2690, that would be compromised by failing to allow immediate appeal of a denial of absolute Presidential immunity, id. at 743, 102 S.Ct. 2690. In examining collateral order review when a qualified immunity claim was at issue in Mitchell, the Court noted “the threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service if a full trial were threatened whenever they acted reasonably in the face of law that is not ‘clearly established.’ ” Will, 546 U.S. at 352, 126 S.Ct. 952 (citing Mitchell, 472 U.S. at 526, 105 S.Ct. 2806). Similarly, in Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), the Court “explained the immediate appeala-bility of an order denying a claim of Eleventh Amendment immunity by adverting not only to the burdens of litigation but to the need to ensure vindication of a State’s dignitary interests.” Will, 546 U.S. at 352, 126 S.Ct. 952 (citing Metcalf, 506 U.S. at 146, 113 S.Ct. 684). “In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State’s dignitary interests, and mitigating the government’s advantage over the individual.” Id. at 352-53, 126 S.Ct. 952.
The Court has also applied the collateral order doctrine in a narrow set of criminal cases. In Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), the Court applied the doctrine to an order denying a motion to reduce bail because the order “becomes moot if review awaits conviction and sentence,” Flanagan, 465 U.S. at 266, 104 S.Ct. 1051 (citing Stack, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3). “Orders denying motions to dismiss an indictment on double jeopardy or speech or debate grounds are likewise immediately appealable” because “appellate review must occur before trial to be fully effective.” Id. This is so because “[t]he right guaranteed by the Double Jeopardy Clause is more than the right not to be convicted in a second prosecution for an offense: it is the right not to be ‘placed in jeopardy’- — that is, not to be tried for the offense.” Id. (citing Abney v. *822 United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)). “Similarly, the right guaranteed by the Speech or Debate Clause is more than the right not to be convicted for certain legislative activities: it is the right not to ‘be questioned’ about them — that is, not to be tried for them.” Id. (citing Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979)). These cases generally present rights derived from the Constitution.
New Jersey’s interlocutory appeal presents none of these considerations that have justified collateral order review. There is no separation of powers issue, see Nixon, 457 U.S. at 748, 102 S.Ct. 2690, nor are there claims of qualified immunity or state sovereign immunity, see Mitchell, 472 U.S. at 526, 105 S.Ct. 2806; Metcalf, 506 U.S. at 146, 113 S.Ct. 684. Nor is this a criminal case in which appellate review after final judgment will impinge upon a constitutional right or render an issue moot. See Helstoski, 442 U.S. at 508, 99 S.Ct. 2445; Abney, 431 U.S. at 659, 97 S.Ct. 2034. Rather, this is a civil case that involves a dispute over money. In that regard New Jersey is no different from the other investors whose securities lost value after the collapse of Lehman, many of which, like New Jersey, are state and local government investment funds.
If we lack collateral order jurisdiction to review the pretrial disqualification of defense counsel in a criminal case, which raises an issue of constitutional import, see Flanagan, 465 U.S. at 263, 104 S.Ct. 1051, we fail to see how we have collateral order jurisdiction to review the District Court’s order denying remand in this civil case, see Caterpillar Inc. v. Lewis, 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (“An order denying a motion to remand, standing alone, is obviously not final and immediately appealable as of right.”) (citation, quotations and alterations omitted); Chi, Rock Island & Pac. R.R. v. Stude, 346 U.S. 574, 578, 74 S.Ct. 290, 98 L.Ed. 317 (1954) (“Obviously, ... an order [denying a motion to remand] is not final and ap-pealable if standing alone.”) (citation omitted); Spring Garden Assocs., L.P. v. Resolution Trust Corp., 26 F.3d 412, 414 (3d Cir.1994) (“As for the district court’s denial of a remand, neither 28 U.S.C. § 1291 nor 28 U.S.C. § 1292 expressly confers jurisdiction on this court to review orders denying a remand to a state court.”) (citations omitted).
We are not persuaded that the District Court’s order denying remand falls within the “narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final.” Digital Equip., 511 U.S. at 867, 114 S.Ct. 1992 (internal citations and quotations omitted). If New Jersey’s arguments in favor of remand are correct, a question that we do not decide today, an appellate court can vacate the order denying remand with instructions to remand the case to the New Jersey court.
New Jersey’s reliance on the cost and delay associated with litigation in the consolidated proceedings does little to advance its position. The Supreme Court has held that “the possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress [in § 1291].” Richardson-Merrell, 472 U.S. at 436, 105 S.Ct. 2757; see also Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 499, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (noting that the Court “has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order”). The Court held that “ ‘[i]f the expense of litigation were a sufficient reason for granting an exception to the final judgment rule, the exception *823 might well swallow the rule.’ ” Richardson-Merrell, 472 U.S. at 436, 105 S.Ct. 2757 (quoting Lusardi v. Xerox Corp., 747 F.2d 174, 178 (3d Cir.1984)).
That reasoning applies here. Congress considered the expense of litigation when it fashioned the final judgment rule of § 1291, and we cannot second-guess its policy choice by using those same litigation expenses to justify departure from the rule. See id. at 434, 105 S.Ct. 2757 (“One purpose of the final judgment rule embodied in § 1291 is to avoid the delay that inherently accompanies time-consuming interlocutory appeals.”) (citing Flanagan, 465 U.S. at 264, 104 S.Ct. 1051); see also Transtech Indus., Inc. v. A & Z Septic Clean, 5 F.3d 51, 56 (3d Cir.1993) (“That an erroneous ruling may result in additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress in § 1291.”) (citations, alterations and internal quotations omitted); Powers v. Southland Corp., 4 F.3d 223, 232 (3d Cir.1993) (“The courts ... have consistently rejected claims that the time and expense of litigating a suit that will later be reversed amounts to effective denial of review because those costs can never be recovered.”). Moreover, litigation costs are inherent in the denial of every motion to remand. Such costs alone do not render the order “effectively unreviewable” because to hold otherwise “would leave the final order requirement of § 1291 in tatters,” Will, 546 U.S. at 351, 126 S.Ct. 952, and would render hollow § 1291’s requirement of finality.
Apparently recognizing the dearth of authority supporting its position, New Jersey relies on a non-precedential opinion of this court for its statement that “an order denying remand is reviewable under the collateral order doctrine.” Dieffenbach v. CIGNA Inc., 310 Fed.Appx. 504, 506 (3d Cir.2009) (per curiam) (citing Pennsylvania v. Newcomer, 618 F.2d 246, 249 (3d Cir.1980)). As a non-precedential opinion, Dieffenbach is only as persuasive as its reasoning. Dieffenbach provides no reasoning relevant to the collateral order doctrine except a lone citation to Newcomer, which does not support collateral order review of an order denying remand. 618 F.2d at 247. On the contrary, the court in Newcomer noted that “[i]n the instant case no effort was made to secure collateral order review of the denial of the motion to remand,” and thus the court held that “we need not decide whether direct appeal was available under [the collateral order doctrine] ....”[3] Id. at 249. Even if we found the statement in Dieffenbach to be persuasive, we would not have cited it as authority. See 3d Cir. Internal Operating P. 5.7 (“The court by tradition does not cite to its not precedential opinions as authority.”).
Finally, New Jersey emphasized at oral argument that it is “not an ordinary litigant,” but rather “a state sovereign” that has been placed into a “procedural morass” entailing “years of litigation [and] years of expense and waste.” We are not unsympathetic to New Jersey’s disinclination to litigate this case in a federal forum, where it will likely be transferred.[4] In *824 deed, we cannot say that we would have denied a petition to hear the appeal under 28 U.S.C. § 1292(b). The Second Circuit granted a similar petition and considered the same statutory conflict as a certified question in WorldCom, 368 F.3d at 94, but that is not our case. We are bound by the motions panel’s denial of New Jersey’s petition for review under § 1292(b) and its petition for panel rehearing. In any event, if, after the trial level proceedings are completed, it is determined that it was error to deny remand, there is nothing to prevent New Jersey from effectuating its purported interest in having its case heard in a New Jersey state court on remand after a final judgment.
III.
Conclusion
For the foregoing reasons, we will grant the Directors’ motion to dismiss the appeal for lack of jurisdiction. Accordingly, we express no view on the conflict between 28 U.S.C. § 1452(a) and the anti-removal provision of the Securities Act, 15 U.S.C. § 77v(a).

. In April 2009, after the removal, the Judicial Panel on Multidistrict Litigation issued a conditional transfer order transferring this case from the District of New Jersey to the consolidated proceedings in the Southern District of New York. See In re Lehman Bros., MDL No.2017 (J.P.M.L. Apr. 30, 2009) (order for conditional transfer). The order was vacated pending this appeal. See In re Lehman Bros., MDL No.2017 (J.P.M.L. Aug. 10, 2009) (order vacating conditional transfer order).

. New Jersey did not seek a writ of mandamus, and we have no occasion to discuss that option.

. New Jersey also attempts to analogize its "interest in protecting certain aspects of the administration of its judicial system” to the state’s interest in Newcomer. N.J.'s Resp. to Mot. at 18. The interests are distinguishable. In Newcomer, the court considered a petition for a writ of mandamus to compel a district court to remand to state court a state criminal prosecution. 618 F.2d at 247. We are not presented with a state criminal prosecution or a petition for a writ of mandamus.

. We note, however, that the Bankruptcy Code ameliorates any comity concerns by providing for abstention in an appropriate case: "nothing in [28 U.S.C. § 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.” 28 U.S.C. § 1334(c)(1); see also In re Mystic Tank Lines Corp., 544 F.3d 524, 528 *824 (3d Cir.2008) ("No provision of the Bankruptcy Code requires the Bankruptcy Court to hear all 'related to’ claims.”).